[No. B146328. Second Dist., Div. Three. Oct. 31, 2002.]

OGANES SAAKYAN et al., Plaintiffs and Appellants, v.
MODERN AUTO, INC., Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portion of this opinion not to be published is the portion of the discussion identified as part I.

COUNSEL

Mardirossian & Associates and Garo Mardirossian for Plaintiff and Appellant Oganes Saakyan.

O'Reilly & Hobart and Charles B. O'Reilly for Plaintiff and Appellant Garnik Paronyan.

Yoka & Smith, Walter M. Yoka, Anthony F. Latiolait; Greines, Martin, Stein & Richland, Kent L. Richland and Barbara S. Perry for Defendant and Appellant.

OPINION

ALDRICH, J.—

INTRODUCTION

In this personal injury lawsuit, we deal with a narrow question concerning statutory offers to compromise under Code of Civil Procedure section 998.[1] The issue arises because this case was tried twice. The first trial resulted in a defense verdict and judgment for defendant, Modern Auto, Inc., which were then set aside by the grant of a motion for new trial. The second trial resulted in a verdict for plaintiffs, Oganes Saakyan and Garnick Paronyan.

[1]All further statutory references are to the Code of Civil Procedure, unless otherwise noted.

Following the second trial, the court denied plaintiffs' motions for expert witness fees (§ 998, subd. (d)) and prejudgment interest (Civ. Code, § 3291) on the ground the first verdict extinguished any rights plaintiffs may have acquired by virtue of their section 998 offers.

In the published portion of this opinion, we hold a statutory offer to compromise under section 998 is not extinguished by a judgment that is vacated by a subsequent order for a new trial. Accordingly, we reverse the order taxing costs and remand for reconsideration consistent with this opinion.

In the unpublished portion of this opinion, we hold that there was no jury misconduct in the second trial, and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit arose after teenagers, Saakyan and Paronyan, along with two others, were involved in a serious accident on the 605 Freeway in June 1992.

The evidence adduced at the second trial shows Saakyan, the driver of the 1986 Honda Accord involved in the accident, had the vehicle lowered. Then, he began looking for new rims for his wheels. Attracted to "Aerofin wheels" in an advertisement in Low Rider magazine, Saakyan inquired at Modern Auto about their availability and price.

On June 29, 1992, plaintiffs and two others arrived at Modern Auto, only to discover the Aerofins had been sold. At the suggestion of Modern Auto's owner, Saakyan agreed to purchase a new six-spoke, 15-inch wheel and tire made for a BMW vehicle, which wheel was wider than those normally found on a Honda Accord.

After Modern Auto installed the new wheels and tires on Saakyan's Honda, Saakyan and the three other teens rode the vehicle a mile or two to the 605 Freeway. Once on the southbound side of the freeway, Saakyan remained in the No. 4 lane. The car drove beautifully. Saakyan had been traveling about 50 or 55 miles an hour for a mile, when suddenly, the car jerked to the left. Despite Saakyan's attempts to control the vehicle, it drove to the right, off the road. Until the accident, the Honda had been operating just as it had before the wheels and tires were installed at Modern Auto.

Saakyan suffered irreversible injury to the spinal cord, is confined to a wheelchair, and has a shortened work-life expectancy.

Paronyan sustained chest trauma, multiple rib fractures, and a burst fracture of the first lumbar vertebral body. He suffers from chronic pain. He is 35 percent disabled and is capable of semisedentary work.[2]

The focus of the case was causation. Both defendant and plaintiffs put on expert testimony addressing this aspect. Defense expert Ernest Klein concluded nothing about the vehicle, as equipped at the time, would have caused the Honda to veer to one side or cause the car to do anything unusual on the smooth surface of the 605 Freeway. There being no physical evidence that the car veered to the left, Klein concluded Saakyan had swerved to the right to avoid a vehicle in front of him.

Plaintiff's expert, Gerald Rosenbluth, brought a "buck,"—a section of a car used as a courtroom model—as demonstrative evidence. Admitted into evidence, the buck consisted of the fender assembly and suspension of the rear portion of a 1986 Honda Accord. Rosenbluth opined the catalyst of the accident was that the left rear wheel was retarded, deflecting the vehicle to the left, followed by an over-correction causing the car to turn to the right almost 90 degrees. The two precipitating mechanical reasons the left rear wheel became trapped were: (1) the incorrect application of the BMW rims to a Honda, and (2) an out-of-balance condition on the left front tire caused by the manner in which the lug nuts had been tightened. Rosenbluth explained that the BMW wheel that Modern Auto installed on Saakyan's car was not designed for a Honda. The BMW wheel is "hub centric," whereas the Honda is a "lug centric" system.

The jury returned its special verdict finding Modern Auto was negligent; its negligence was a cause of Saakyan's and Paronyan's injuries and damage; and that Saakyan suffered $12,232,744 in economic and noneconomic damages while Paronyan suffered a total of $566,928.32 in damages. The jury also found Saakyan was not negligent.

Defendant moved for a new trial and judgment notwithstanding the verdict on the ground, among others, of juror misconduct. The trial court denied defendant's motions. Defendant's appeal followed.

Plaintiffs moved for more than $8 million in expert witness fees (§ 998, subd. (d)) and prejudgment interest (Civ. Code, § 3291). The court denied the request. Plaintiffs' timely appeal from that order followed.

Additional facts will be recited in the relevant discussion below.

---

[2]The other two in the car are not parties to this appeal.

DISCUSSION

I.  *Defendant's appeal.*\*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

II.  *Plaintiffs' cross-appeal.*

A.  *The trial court erred as a matter of law in ruling plaintiffs'
rights under section 998 were extinguished by the first judgment.*

1.  *Facts.*

Plaintiffs made their statutory offers to compromise in February 1994,
before the first trial. Saakyan offered to have judgment entered "in the total
amount of $820,000.00." The same document included an offer by Paronyan
"in the total amount of $115,000.00." The offers were not accepted. No other
offer was made.

The first trial resulted in a special verdict for defendant. Judgment thereon
was entered in January 1995. Thereafter, the court granted plaintiffs' motion
for a new trial based on serious juror misconduct and ordered the judgment
on special verdict be vacated and set aside. In an earlier, unpublished
opinion, this court affirmed the trial court's order for a new trial.

Following the second trial, as noted, the jury returned a special verdict,
this time in favor of plaintiffs, awarding Saakyan $12,233,744 and Paronyan
$566,928.32 in damages. Plaintiffs' memorandum of costs ensued, request-
ing prejudgment interest in the amount of $7,976,420 for Saakyan, and
$369,667.78 for Paronyan, as of the February 1994 offers (Civ. Code,
§ 3291), together with approximately $204,000 in expert witness fees (§ 998,
subd. (d)).

Defendant opposed the motion for prejudgment interest and moved to tax
costs. As one ground for its opposition, defendant argued the entry of
judgment in favor of defendant after the first trial extinguished any rights
plaintiffs might have acquired pursuant to section 998.

Observing that "so many things occurred" in this case, and that it felt
"strongly" it "couldn't in good faith grant the motion on prejudgment
interest," the trial court struck plaintiffs' request for prejudgment interest
(Civ. Code, § 3291) and denied the request for expert witness fees (§ 998,

\*See footnote, *ante,* page 383.

subd. (d)). The trial court explained: "1) The Code of Civil Procedure section 998 offer filed by plaintiff [*sic*] in 1994 is extinguished due to the verdict for the defendant in the first trial. [¶] 2) There was not a Code of Civil Procedure section 998 offer filed in the second trial." The court taxed plaintiffs' requested costs and denied them prejudgment interest. Plaintiffs filed their timely appeal.

  2. *Law.*

Pursuant to section 998, subdivision (d), if the plaintiff's statutory offer to compromise is not accepted and the defendant fails to obtain a more favorable judgment, the prevailing plaintiff becomes eligible to seek reasonable and actually incurred expert witness fees and costs.[6]

Additionally, in a personal injury action, if the conditions of Civil Code section 3291 are met, the plaintiff has the right to obtain prejudgment interest. Specifically, under Civil Code section 3291, if the defendant does not accept the plaintiff's offer pursuant to section 998, and the plaintiff obtains a more favorable judgment, the court must award interest at 10 percent per annum on that judgment, from the date of the plaintiff's first section 998 offer until the judgment is satisfied.[7] The right to prejudgment interest under Civil Code section 3291 is dependent on whether the plaintiff receives a more favorable judgment under section 998. (*Gilman v. Beverly California Corp.* (1991) 231 Cal.App.3d 121, 126 [283 Cal.Rptr. 17].)

Plaintiffs contend the trial court erroneously ruled that the jury verdict in the first trial extinguished any right plaintiffs may have acquired under section 998 based on their statutory offers to compromise made in 1994, which offers were not accepted. They request that we remand the case to the trial court with instructions to reevaluate the validity and reasonableness of the offers, and if they are valid, calculate reasonable witness fees

---

[6]At the time plaintiffs' offers were made, section 998, subdivision (d) stated in pertinent part, "If an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment, the court in its discretion may require the defendant to pay a reasonable sum to cover costs of the services of expert witnesses . . . actually incurred and reasonably necessary in either, or both, the preparation or trial of the case by the plaintiff, in addition to plaintiff's costs." (§ 998, subd. (d); Stats. 1994, ch. 332, § 1, p. 2119.) Between 1994, when plaintiffs' offers were made, and 2000, when the trial court entered its order taxing costs, the Legislature amended subdivision (d) of section 998. None of these amendments has an impact on the discrete issue presented here.

[7]Civil Code section 3291 states in relevant part, "If the plaintiff makes an offer pursuant to Section 998 of the Code of Civil Procedure which the defendant does not accept prior to trial or within 30 days, whichever occurs first, and the plaintiff obtains a more favorable judgment, the judgment shall bear interest at the legal rate of 10 percent per annum calculated from the date of the plaintiff's first offer pursuant to Section 998 of the Code of Civil Procedure which is exceeded by the judgment, and interest shall accrue until the satisfaction of the judgment."

(§ 998, subd. (d)), and add prejudgment interest (Civ. Code, § 3291) from February 1994.

■ Where the issue is the application of law to undisputed facts, we review the trial court's order de novo. (*Barella v. Exchange Bank* (2000) 84 Cal.App.4th 793, 797 [101 Cal.Rptr.2d 167].) ■ We hold the trial court erred here in ruling plaintiffs' benefits pursuant to their statutory offers to compromise made in 1994 were "extinguished due to the verdict for the defendant in the first trial."

Nothing in the wording of these statutes indicates a judgment operates to terminate rights under section 998, where that judgment is later vacated and a new trial is held. (Cf. *Steinfeld v. Foote-Goldman Proctologic Medical Group, Inc.* (1996) 50 Cal.App.4th 1542, 1550 [58 Cal.Rptr.2d 371] [language of Civ. Code, § 3291 does not indicate interest tolls during intervening unsuccessful appeal].) The right to witness fees and prejudgment interest is triggered by a more favorable *judgment*. Section 998 applies when plaintiff's offer "is not accepted and the defendant fails to obtain a more favorable judgment." Likewise, Civil Code section 3291 makes a "simple comparison" between the judgment and the statutory offer to compromise. (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 662-663, fn. 13 [25 Cal.Rptr.2d 109, 863 P.2d 179].)

■ Under California law, when the trial court grants a new trial as to all of the causes of action, the judgment is vacated. (*Beavers v. Allstate Ins. Co.* (1990) 225 Cal.App.3d 310, 329 [274 Cal.Rptr. 766].) The effect of an order granting a new trial is " 'as though no trial had ever been had . . . . The case [is] before the court for trial de novo.' " (*Guzman v. Superior Court* (1993) 19 Cal.App.4th 705, 707 [23 Cal.Rptr.2d 585].)[8] The grant of a new trial "[leaves] the case at large and the parties [are] placed in the same position as if it had never been tried . . . ." (*Sichterman v. R.M. Hollingshead Co.* (1931) 117 Cal.App. 504, 506 [4 P.2d 181]; see also *Fountain Valley Chateau Blanc Homeowner's Assn. v. Department of Veterans Affairs* (1998) 67 Cal.App.4th 743, 751 [79 Cal.Rptr.2d 248].) Hence, any verdict or judgment entered in advance of a new trial order was merely ephemeral, because superceded by the judgment entered after new trial.

■ Here, the effect of the trial court's grant of a new trial was to nullify the first judgment entered in 1995, with the result neither the judgment entered after the first trial, nor the special verdict upon which it was based,

---

[8]"Whether by appellate reversal of a judgment . . . or by the trial court granting a new trial motion, the effect is the same . . . ." (*Guzman v. Superior Court, supra,* 19 Cal.App.4th at p. 708.)

exists to extinguish any benefits that may have arisen under section 998. The order granting plaintiffs a new trial, which order we affirmed in the first appeal, vacated the 1995 judgment and placed the parties in the same position as if the case had never been tried (*Sichterman v. R.M. Hollingshead Co.,* *supra,* 117 Cal.App. at p. 506), with any rights under plaintiffs' statutory offers extant.[9] It matters not to the result that the intervening 1995 judgment was for defendant because that judgment was superceded by the second judgment in favor of plaintiffs. Therefore, as a matter of California civil procedure, no intervening verdict or judgment existed to expunge benefits that may have arisen from the earlier statutory offers to compromise.[10]

We reject defendant's argument that our holding functions as a disincentive to settlement and undermines the policy behind these statutes.[11] To the

[9]We are not persuaded by defendant's reference to new trial orders "*ressurect*[*ing*] a plaintiff's section 998 rights." There was nothing to *resurrect* where the benefits arising as the result of defendant's failure to accept the offer remained extant. (*Beavers v. Allstate Ins. Co.,* *supra,* 225 Cal.App.3d at p. 329; cf. *Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516 [117 Cal.Rptr.2d 220, 41 P.3d 46] [reversal of summary judgment after plaintiff's § 998 offer rejected; there was no discussion that reversed judgment terminates right to prejudgment interest]; *Steinfeld v. Foote-Goldman Proctologic Medical Group, Inc., supra,* 50 Cal.App.4th at pp. 1550-1551 [multiple intervening new trial orders after plaintiffs' § 998 offer rejected; there was no discussion that new trials terminate right to prejudgment interest].)

[10]*Hess v. Ford Motor Co., supra,* 27 Cal.4th 516, and *Steinfeld v. Foote-Goldman Proctologic Medical Group, Inc., supra,* 50 Cal.App.4th 1542, are instructive because they both affirmed awards of prejudgment interest notwithstanding intervening judgments that had been set aside. In *Hess,* summary judgment *in favor of the defendant* was reversed and the jury eventually returned a verdict *against the defendant* in the ensuing trial in an amount that exceeded the plaintiff's early statutory offer to compromise. (*Hess v. Ford Motor Co., supra,* at pp. 522-523.) In *Steinfeld,* the case was tried three times after the statutory offer to compromise had been made because the trial court granted motions for new trial, and eventually the plaintiff secured a verdict in excess of the section 998 offer. (*Steinfeld v. Foote-Goldman Proctologic Medical Group, Inc., supra,* at p. 1545.) Although in neither of the cases did the defendant argue the intervening judgment terminated rights under the earlier section 998 offer, in both cases, the award of prejudgment interest (Civ. Code, § 3291) from the date of the statutory offer to compromise (§ 998) was upheld. (*Hess v. Ford Motor Co., supra,* at pp. 530-533; *Steinfeld v. Foote-Goldman Proctologic Medical Group, Inc., supra,* at pp. 1550-1551.)

[11]The Supreme Court in *Fairmont Ins. Co. v. Superior Court* (2000) 22 Cal.4th 245, 253 [92 Cal.Rptr.2d 70, 991 P.2d 156], held that when a new trial is required, the parties are entitled to reopen discovery. The court reasoned, inter alia, without renewed discovery, the parties would face substantial barriers to effective trial preparation in frustration of one of discovery's purposes, namely to promote settlement. Defendant cites *Fairmont Ins. Co. v. Superior Court, supra,* at pages 252-253 to argue that just as the policy favoring settlements is fostered by reopening discovery upon a new trial order, the policy behind section 998 and Civil Code section 3291 is served by holding the 1995 judgment in defendant's favor terminated any benefits to which plaintiffs may have been entitled by virtue of their statutory offer to compromise. The argument is extremely attenuated. The Supreme Court in *Fairmont Ins. Co.* recognized the well-settled fact that "a new trial begins trial proceedings anew, ' "as though no trial had ever been had . . . ." ' [Citation.]" (*Fairmont Ins. Co.,* at p. 252.) Nothing in the

contrary, the vagaries of litigation, including the possibility of juror misconduct or reversal on appeal, which increases the opposing party's costs, are part of the risk inherent in rejecting a section 998 offer. ■ In any event, an order for new trial does not preclude either party from attempting to settle anew, thereby fostering the public policy in favor of settlement. Furthermore, one of the foremost purposes behind Civil Code section 3291 is "to provide just compensation to the injured party for loss of use of the award during the prejudgment period—in other words, to make the plaintiff whole as of the date of the injury." (*Lakin v. Watkins Associated Industries, supra,* 6 Cal.4th at p. 663.) ■ Defendant should not be allowed to take advantage of juror misconduct (which misconduct neither plaintiffs nor defendant caused) to avoid the consequences of the risk it took, by rejecting the statutory offers to compromise and forcing the matter to trial. Otherwise, defendant would obtain a windfall at the expense of plaintiffs who could never be made whole as of the date of their injuries. Were intervening, invalid judgments to extinguish a section 998 offer, that risk would be reduced and the purposes of the statutes—to encourage reasonable settlements in personal injury actions, reduce demand on our overburdened courts, penalize those who refuse reasonable settlement offers, and compensate plaintiff for the loss of use of the award while awaiting the outcome (*ibid.*; *Hrimnak v. Watkins* (1995) 38 Cal.App.4th 964, 980-981 [45 Cal.Rptr.2d 514])—would be undermined.

Therefore, the trial court erred as a matter of law in concluding the first judgment entered in 1995 in favor of defendant, which was vacated by the grant of a new trial, extinguished any benefits plaintiffs may have had pursuant to section 998.

3. *The matter must be remanded to reconsider the motions for and against costs and prejudgment interest.*

Our conclusion, that nothing about the first, vacated judgment extinguished any rights that may have arisen as the result of plaintiffs' statutory settlement offers, does not end the matter. Defendant's motion to tax costs and opposition to prejudgment interest raised a number of other arguments why the trial court should not grant plaintiffs their request for witness fees and prejudgment interest. Although the trial court mentioned two reasons for taxing costs during oral argument, the minute order cited only extinguishment as the court's reason for granting defendant's motions.

Because the court below gave no real consideration to the other arguments raised by the parties in support of and in opposition to the motion to tax

---

general legal principal allowing additional discovery after an order for a new trial operates to terminate extant rights under a statutory offer to compromise.

costs, the trial court must revisit the issue and determine whether the offers were valid and reasonable under all of the circumstances, at the time they were was made, and if so, fix the fees and interest. (*Wickware v. Tanner* (1997) 53 Cal.App.4th 570, 575-576 [61 Cal.Rptr.2d 790]; *Elrod v. Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692, 699-700 [241 Cal.Rptr. 108]; *Wear v. Calderon* (1981) 121 Cal.App.3d 818, 821 [175 Cal.Rptr. 566]; *Moffett v. Barclay* (1995) 32 Cal.App.4th 980, 982-984 [38 Cal.Rptr.2d 546] [invalid statutory settlement offer causes reversal of all benefits under § 998, including prejudgment interest].) We do not address the validity or reasonableness of the offers, and take no position on how the trial court should rule. In light of this opinion, the order on defendant's motion to tax costs entered November 15, 2000, must be reversed and remanded for reconsideration of the validity and reasonableness of the section 998 offer in light of all of the circumstances.

## Disposition

The judgment is affirmed; the order on defendant's motion to tax costs dated November 15, 2000, is reversed and remanded for further proceedings consistent with this opinion. Each party to bear its own costs on appeal.

Klein, P. J., and Croskey, J., concurred.

The petition of appellant Modern Auto, Inc., for review by the Supreme Court was denied January 15, 2003.